UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

GREAT AMERICAN
INSURANCE COMPANY.

    Plaintiff,

v.

GTS CONTRACTING, LLC,
SEAN GESTRICH and
KARLA GESTRICH,

    Defendants.
_____/

## COMPLAINT FOR DAMAGES

Plaintiff, GREAT AMERICAN INSURANCE COMPANY, by and through its undersigned counsel, hereby sue the Defendants, GTS CONTRACTING, LLC, SEAN GESTRICH and KARLA GESTRICH, and states as follows:

### JURISDICTION AND VENUE

1.    This is an action for damages in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00), exclusive of interest, fees and costs, and this Court otherwise has jurisdiction over the subject matter hereof.

2.    Subject matter jurisdiction is based on 28 U.S.C. §1332(a)(1), diversity of citizenship. The parties are citizens of different states and the amount in controversy exceeds the jurisdictional limits of this Court.

3.    Plaintiff, GREAT AMERICAN INSURANCE COMPANY ("GAIC"), is a corporation organized and existing under the laws of the State of Ohio, whose principal place of

CASE NO.: _____

business is located in Cincinnati, Ohio, and who are duly registered and authorized to do business in the State of Florida and, thus, is a citizen of the State of Ohio.

4. Defendant, GTS CONTRACTING, LLC ("GTS"), is a limited liability company organized and existing under the laws of the State of Florida, whose principal place of business is located in Fort Lauderdale, Broward County, Florida and, thus, is a citizen of the State of Florida. At all times relevant hereto, GTS was doing business under the name of "GTS Contracting & Cabinets".

5. Defendant, SEAN GESTRICH, is a citizen of the State of Florida who resides in Fort Lauderdale, Broward County, Florida and who is otherwise *sui juris*.

6. Defendant, KARLA GESTRICH, is a citizen of the State of Wisconsin who resides in in Fontana, Walworth County, Wisconsin, and who is otherwise *sui juris*.

7. For the purposes hereof, Defendants, GTS, SEAN GESTRICH and KARLA GESTRICH shall be collectively referred to as the "INDEMNITORS".

8. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1). GTS both resides in and contracted to perform work related to this claim in Fort Lauderdale, Broward County, Florida. As such, GTS has sufficient contacts for personal jurisdiction under 28 U.S.C. §1391(d). Venue is also proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to this claim occurred in Lantana, Palm Beach County, Florida. GTS entered into two (2) separate contracts to perform construction work for the Water Tower Commons Project located in Lantana, Palm Beach County, Florida, and is alleged to have breached those contracts, giving rise to GAIC's claims against the INDEMNITORS.

9. All conditions precedent to the filing of the instant action have occurred or have otherwise been waived.

## GENERAL ALLEGATIONS

### A. The Cabinetry and Countertops ("C&C") *Subcontract* and *Bonds*

10. On or about November 14, 2018, Verdex Construction, LLC ("Verdex" or "Contractor"), as general contractor, and GTS, as subcontractor, entered into a written *Verdex Construction Standard Subcontract Agreement* (the "*C&C Subcontract*") to "furnish and install all labor, materials, equipment and services necessary for an incidental to the execution and completion of all of the Clubhouse and Residential Cabinetry and Countertops" for the project commonly known as the "Water Tower Commons Project" (the "Project"). A true and correct copy of the *C&C Subcontract* is attached hereto and made a part hereof as **Exhibit "A"**.

11. In connection with GTS' entry into the *C&C Subcontract*, on or about February 6, 2019, GAIC issued a separate *Subcontractor Performance Bond* and *Subcontractor Payment Bond*, each bearing number 2160992 (the "*C&C Bonds*"), on behalf of GTS, as principal, with Verdex, as obligee, in the penal sums of One Million Three Hundred Twenty-Five Thousand and 00/100 Dollars ($1,325,000.00). True and correct copies of the *C&C Bonds* are attached hereto and made a part hereof as **Composite Exhibit "B"**.

### B. The Doors, Hardware, Frames and Accessories ("DHFA") *Subcontract* and *Bonds*

12. On or about December 26, 2018, Verdex, as general contractor, and GTS, as subcontractor, entered into a written *Verdex Construction Standard Subcontract Agreement* (the "*DHFA Subcontract*") to "furnish and install all labor, materials, equipment and services necessary for an incidental to the execution and completion of all of the Doors, Frames & Hardware and Accessories" for the Project. A true and correct copy of the *DHFA Subcontract* is attached hereto and made a part hereof as **Exhibit "C"**.

13. In connection with GTS' entry into the *DHFA Subcontract*, on or about February 12, 2019, GAIC issued a separate *Subcontractor Performance Bond* and *Subcontractor Payment Bond*, each bearing number 2160993 (the "*DHFA Bonds*"), on behalf of GTS, as principal, with Verdex, as obligee, in the penal sums of One Million Three Hundred Fifty-One Thousand Five Hundred Seventy-Seven and 00/100 Dollars ($1,351,577.00). True and correct copies of the *DHFA Bonds* are attached hereto and made a part hereof as **Composite Exhibit "D"**

 **C. Construction Disputes and Defaults**

14. Disputes arose between Verdex and GTS under the *Subcontracts*. As a result of such disputes, Verdex has declared GTS in default and terminated GTS' rights under the *DHFA Subcontract*. Additionally, Verdex has declared GTS in default, but not yet terminated GTS' rights under the *C&C Subcontract*.

15. In October/November 2019, Verdex advised GAIC of GTS' status under both the *DHFA Subcontract* and *C&C Subcontract* (collectively, the "*Subcontracts*"), and has made demand upon GAIC for performance of its obligations under the *DHFA Bonds* and *C&C Bonds* (collectively, the "*Bonds*").

16. By correspondence dated November 19, 2019, Verdex advised GAIC of significant anticipated shortfalls under the *Subcontracts* as a result of GTS' alleged default, including forecasted deficits under the *DHFA Subcontract* of $854,827.33 and under the *C&C Subcontract* of $1,432,090.07. Although GAIC's investigation of Verdex's claims may have yielded different projected shortfalls, the overall exposure to GAIC under the bonds exceeds Two Million and 00/100 Dollars ($2,000,000.00).

17. Based upon Verdex's claim, GAIC commenced a full and independent investigation into the various allegations against GTS under a complete reservation of rights.

**D. The *Indemnity Agreement***

18.     As a condition precedent to issuing the *Bonds*, each of the INDEMNITORS, individually, jointly and severally executed a *General Indemnity Agreement* (the "*Indemnity Agreement*") dated February 1, 2019.  A true and correct copy of the *Indemnity Agreement* is attached hereto as **Exhibit "E"**.

19.     Pursuant to Article 3 of the *Indemnity Agreement*, each of the INDEMNITORS, jointly and severally, agreed to exonerate, indemnify and hold GAIC harmless from any losses and/or expenses incurred in connection with GAIC's issuance of the *Bonds*:

> That the Undersigned will perform all the obligations of any such Bond or Bonds and ***will at all times exonerate, indemnify and keep indemnified the Suety from and against any and all liability, loss, costs, damages, expenses, counsel and attorneys' fees, claims, demands, suits, judgements, orders and adjudications that the Surety shall or may for any cause at any time sustain, incur or become subject to*** by reason of executing any such Bond or Bonds, or by reason of obtaining or seeking a release therefrom or in enforcing any of the agreements herein contained. (Emphasis added)

20.     Pursuant to Article 6 of the *Indemnity Agreement*, each of the INDEMNITORS further, jointly and severally, agreed to collateralize GAIC against any potential claims, losses and/or expenses incurred as a result of GAIC's issuance of the *Bonds*:

> That in the event of claim or suit against the Surety or any such Bond or Bonds the Undersigned ***shall immediately upon demand place the Surety in current funds sufficient to indemnify the Surety up to the full amount claimed*** or for which suit is brought ***plus potential interest, attorney's fees and costs***, or for the amounts set by the Surety as loss and/or expense reserves whether or not the Surety has made any loss payments. … The Undersigned acknowledge that the ***failure of the Undersigned to immediately deposit with the Surety the sum demanded will cause irreparable harm to the Surety for which the Surety has no adequate remedy at law***.  The Undersigned agree that the Surety shall be entitled to injunctive relief for specific performance of any or all of the obligations of the Undersigned under this Agreement including the obligation to pay the Surety the sum demanded and hereby waive any claims of defenses to the contrary…. (Emphasis added)

5

21. Pursuant to Article 12 of the *Indemnity Agreement*, each of the INDEMNITORS, jointly and severally, agreed to procure the discharge of GAIC from and against any losses and/or expenses incurred in connection with GAIC's issuance of the *Bonds*:

> The Undersigned will, on request of Surety, ***procure the discharge of Surety from any Bond(s) and all liability by reason thereof***. If such discharge is unattainable, the Undersigned will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such Bond(s), or make provisions acceptable to Surety for the funding of the bonded obligation(s). (Emphasis added)

22. On November 21, 2019, GAIC made demand upon the INDEMNITORS for exoneration, indemnification and collateralization under the *Indemnity Agreement*. By this letter, GAIC made, among other things, demand upon INDEMNITORS to post collateral in the amount of Two Million and 00/100 Dollars ($2,000,000.00) by no later than December 3, 2019. A true and correct copy of the correspondence dated November 21, 2019 is attached hereto as **Exhibit "F"**.

23. The INDEMNITORS have failed and/or refused to fulfill their contractual and common law exoneration, indemnification and collateralization obligations to GAIC.

24. GAIC has incurred losses and expenses under the *Indemnity Agreement* (including professional and consulting fees, attorneys' fees and costs) in investigating this matter and will continue to incur significant additional losses and/or expenses in investigating, defending against and/or resolving Verdex's claims under the *Bonds*, for all of which amounts the INDEMNITORS are, and will remain, liable.

25. GAIC has retained the services of the undersigned counsel to represent its interests in the matter and is required to pay a reasonable fee for such services.

26. Pursuant to the terms of the *Indemnity Agreement*, the INDEMNITORS agreed to be liable for, and agreed that GAIC was entitled to recover from the INDEMNITORS, any and all attorneys' fees and costs incurred in the prosecution of the instant action.

### COUNT I – BREACH OF CONTRACT: FAILURE TO POST COLLATERAL (<u>AGAINST INDEMNITORS</u>)

27. GAIC re-alleges and re-avers the allegations of paragraphs 1 through 26 hereof, as if fully set forth herein.

28. This is an action for damages seeking relief at law under the *Indemnity Agreement*.

29. There exists a valid and fully enforceable contract between GAIC and the INDEMNITORS, the terms of which are memorialized in the *Indemnity Agreement*.

30. GAIC has fully performed all of its obligations under the *Indemnity Agreement*.

31. Pursuant to the terms of the *Indemnity Agreement*, the INDEMNITORS agreed to immediately provide GAIC with sufficient funds to cover any losses under the *Bonds*.

32. By virtue of the rights of collateralization set forth in the *Indemnity Agreement*, GAIC is entitled to the INDEMNITORS' assets to protect and/or secure it from any and all losses and/or expenses which may be incurred in connection with GAIC's issuance of the *Bonds*.

33. The INDEMNITORS are obligated to GAIC under the *Indemnity Agreement* for any and all additional indebtedness under the *Indemnity Agreement* which may continue to accrue, including but not limited to the expenditure of funds paid in investigation, resolution, and/or satisfaction of any liability which may ultimately be determined in favor of Verdex.

34. As a result of GAIC's potential liability arising from Verdex's claims, GAIC has made demand upon the INDEMNITORS under the *Indemnity Agreement* to post satisfactory collateral with GAIC to cover GAIC's potential losses.

35. Despite such demands, the INDEMNITORS have failed and/or refused to fully perform their obligations under the *Indemnity Agreement*, including but not limited to their obligation to post satisfactory collateral in the amount of Two Million and 00/100 Dollars ($2,000,000.00) as demanded by GAIC.

36. Unless the personal assets of the INDEMNITORS are collateralized, GAIC will not be adequately secured for its obligation on the *Bonds*.

WHEREFORE, GAIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the INDEMNITORS, requiring the INDEMNITORS to perform under the *Indemnity Agreement* by posting sufficient collateral to exonerate GAIC for any sums that GAIC may incur and/or be required to pay for losses and/or expenses incurred as a result of having issued the *Bonds*, paying and reimbursing GAIC for its attorneys' fees and costs incurred in prosecution of the instant action, and awarding GAIC such other and further relief as this Court deems necessary, just and proper.

### COUNT II – BREACH OF CONTRACT
### FAILURE TO INDEMNIFY
### (<u>AGAINST INDEMNITORS</u>)

37. GAIC re-alleges and re-avers the allegations of paragraphs 1 through 26 hereof, as if fully set forth herein.

38. This is an action for damages seeking relief at law under the *Indemnity Agreement*.

39. There exists a valid and fully enforceable contract between GAIC and the INDEMNITORS, the terms of which are memorialized in the *Indemnity Agreement*.

40. GAIC has fully performed all of its obligations under the *Indemnity Agreement*.

41. The INDEMNITORS have failed and/or refused to fully perform their obligations under the *Indemnity Agreement*, including but not limited to their obligation to indemnify GAIC.

CASE NO.: _____

42. As a proximate result of the INDEMNITORS' breach of their obligations under the *Indemnity Agreement*, GAIC has and will continue to incur substantial financial damages, including but not limited to the expenditure of funds paid in investigating, addressing and resolving Verdex's claims, and the fees and costs incurred in the prosecution of the instant action.

WHEREFORE, GAIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the INDEMNITORS, awarding GAIC its general, special and consequential damages which have been and/or will be incurred as a result of the INDEMNITORS' breach of the *Indemnity Agreement*, awarding GAIC its attorneys' fees and costs incurred in prosecution of the instant action pursuant to the terms of the *Indemnity Agreement*, and awarding GAIC such other and further relief as this Court deems necessary, just and proper.

### COUNT III – COMMON LAW INDEMNIFICATION
### (<u>AGAINST GTS</u>)

43. GAIC re-alleges and re-avers the allegations of paragraphs 1 through 26 hereof, as if fully set forth herein.

44. This is an action for damages seeking relief at common law.

45. There exists a special relationship between GAIC, as surety, and GTS, as principal, arising out of the parties' business dealings related to the Project and the *Bonds*, such that it is appropriate for common law indemnification to exist.

46. GAIC has fully and completely performed any and all obligations arising out of the parties' business dealings related to the Project and the *Bonds*, and is wholly without fault for any losses, expenses and/or liabilities which have and/or may ultimately arise therefrom.

47. Any and all losses and expenses incurred to date as a result of the special relationship between GAIC and GTS arise only out of the fault and/or wrongdoing of GTS.

48. At common law, GTS is responsible to GAIC for any and all losses and expenses incurred or to be incurred.

WHEREFORE, GAIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against Defendant GTS, awarding GAIC its general, special and consequential damages which have been and/or will be incurred as a result of GAIC's payment of losses and expenses for which GTS should be liable under the legal theory of common law indemnity, awarding GAIC its reasonable attorneys' fees and costs incurred in prosecution of the instant action, and awarding GAIC such other and further relief as this Court deems necessary, just and proper.

## COUNT IV – BREACH OF CONTRACT: FAILURE TO EXONERATE (<u>AGAINST INDEMNITORS</u>)

49. GAIC re-alleges and re-avers the allegations of paragraphs 1 through 26 hereof, as if fully set forth herein.

50. This is an action for contractual exoneration under the *Indemnity Agreement*.

51. There exists a valid and fully enforceable contract between GAIC and the INDEMNITORS, the terms of which are memorialized in the *Indemnity Agreement*.

52. GAIC has fully performed all of its obligations under the *Indemnity Agreement*.

53. The INDEMNITORS have failed and/or refused to fully perform their obligations under the *Indemnity Agreement*, including but not limited to their obligation to exonerate GAIC.

WHEREFORE, GAIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the INDEMNITORS, awarding GAIC its general, special and consequential damages which have been and/or will be incurred as a result of the INDEMNITORS' breach of the *Indemnity Agreement*, awarding GAIC its attorneys' fees and costs

incurred in prosecution of the instant action pursuant to the terms of the *Indemnity Agreement*, and awarding GAIC such other and further relief as this Court deems necessary, just and proper.

### COUNT V – COMMON LAW EXONERATION
### (<u>AGAINST GTS</u>)

54. GAIC re-alleges and re-avers the allegations of paragraphs 1 through 26 hereof, as if fully set forth herein.

55. This is an action for exoneration at common law.

56. There exists a special relationship between GAIC, as surety, and GTS, as principal, arising out of the parties' business dealings related to the Project and the *Bonds*, such that it is appropriate for common law exoneration to exist.

57. GAIC has fully and completely performed any and all obligations arising out of the parties' business dealings related to the Project and the *Bonds*, and is wholly without fault for any losses, expenses and/or liabilities which have and/or may ultimately arise therefrom.

58. GTS is obligated to GAIC under the *Indemnity Agreement* for any and all additional indebtedness arising out of the special relationship which may continue to accrue, including but not limited to the expenditure of funds paid in investigation, resolution, and/or satisfaction of any liability which may ultimately be determined in favor of Verdex.

59. Any and all losses and expenses which may be incurred by GAIC as a result of the outstanding pending claims against the *Bonds*, arise only out of the vicarious, constructive, derivative or technical liability imposed upon GAIC as a result of the fault and/or wrongdoing of GTS.

60. At common law, GTS is responsible to GAIC for any and all losses and expenses incurred or to be incurred, and GTS is further obligated to immediately provide GAIC with sufficient funds as needed to satisfy GAIC's existing and potential obligations under the *Bonds*.

61. GTS has failed to satisfy its obligations at common law and in equity by refusing to exonerate or otherwise place funds with GAIC sufficient to cover the actual and/or potential losses arising as a result of the claim against the *Bonds*. Unless the personal assets of GTS are collateralized, GAIC will not be adequately secured for its obligation on the *Bonds*.

62. GAIC is fearful and apprehensive that GTS is or will become financially unable to pay any amounts that may be found owing to the outstanding claimants under the *Bonds* for which GAIC may be liable, or that GTS, based upon its refusal to exonerate GAIC in accordance with its demands, will sell, transfer, dispose of, lien, secure or otherwise divert or conceal its assets.

63. GAIC is also fearful and apprehensive that GTS will be financially unable to pay the expenses incurred by GAIC, including attorneys' fees.

64. GAIC will suffer irreparable damage and loss because of its inability to recover the GTS funds sufficient to protect GAIC from any and all losses and/or expenses which may be incurred in connection with GAIC's issuance of the *Bonds*.

65. GAIC has no adequate remedy at law, and the relief sought herein constitutes the only means by which GAIC can secure adequate relief and by which furtherance of justice may be served.

WHEREFORE, GAIC respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against GTS, requiring GTS to exonerate GAIC at common law as follows: (a) procure the discharge and exoneration of GAIC under the *Bonds* and from any and all liability by reason thereof; (b) post sufficient collateral to exonerate GAIC for any sums that GAIC may incur and/or be required to pay for losses and/or expenses incurred as a result of having issued the *Bonds*; (c) pay and reimburse GAIC for its attorneys' fees and costs incurred in prosecution of

the instant action; and (d) award GAIC such other and further relief as this Court deems necessary, just and proper.

**DATED** this 19<u>th</u> day of December, 2019.

> **ETCHEVERRY HARRISON LLP**
> Attorneys for GAIC
> 150 South Pine Island Road, Suite 105
> Fort Lauderdale, Florida 33324
> Telephone: (954) 370-1681
> Facsimile: (954) 370-1682
> Etcheverry@etchlaw.com
> Geller@etchlaw.com
> Service@etchlaw.com
>
> By: \_\_/s/ *Jeffrey S. Geller*_____
> Edward Etcheverry, Fla. Bar No.: 856517
> Jeffrey S. Geller, Fla. Bar No.: 63721